USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/01/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYNK MEDIA LLC,

                    Plaintiff,

    -against-

TOWNSQUARE MEDIA, INC.,

                    Defendant.

No. 24-CV-04222 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Lynk Media LLC ("Plaintiff") brings this action against Defendant Townsquare Media, Inc. ("Townsquare") asserting claims for copyright infringement in violation of 17 U.S.C. § 501. Plaintiff specifically alleges that Townsquare infringed on its copyright by (1) embedding Plaintiff's video in a news article published on Townsquare's website and (2) using a screenshot of the video in that news article. Pending before the Court is Townsquare's motion to dismiss Plaintiff's First Amended Complaint ("FAC"). Townsquare seeks to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, Townsquare's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff is a professional videography company. (FAC ¶ 10.) Plaintiff has obtained active and valid copyright registrations for many of its videos from the United States Copyright Office ("USCO"). (*Id*. ¶ 12.) Townsquare is a news outlet and media company which owns a comprehensive portfolio of digital marketing platforms and traditional broadcasting stations. (*Id*.

1

¶ 29.)  One of Townsquare's digital marketing platforms is "nj1015.com" (the "Website").  (*Id*. ¶ 3.)  The Website is monetized in that it contains paid advertisements.  (*Id*. ¶ 28.)

## I.  Plaintiff's Video

On January 8, 2024, Oliya Fedun captured a video of Pro-Palestinian protestors halting traffic at the Holland Tunnel in New York, NY (the "Video").  (*Id*. ¶¶ 2, 14.)  Plaintiff, through written agreement with Fedun, owns the rights and licenses of the Video, including for online and print publication purposes.  (*Id*. ¶¶ 2, 18.)  According to Plaintiff, the original purpose of the Video was to document a then current newsworthy event—Pro-Palestinian protestors shutting down the Holland Tunnel.  (*Id*. ¶ 16.)  Fedun created the Video with the intention that it be used commercially, including for news reporting purposes.  (*Id*. ¶ 17.)

Fedun first published the Video on her verified X account on January 8, 2024.[1]  (*Id*. ¶ 19.)  The post containing the Video appears alongside a statement that reads: "Desk@freedomnews.tv to license footage."  (*Id*. ¶ 19; Pl. Ex. 2.)  "FreedomNews.tv" is Plaintiff's pseudonym.  (*Id*. ¶ 43).  Fedun's X profile header similarly states: "Desk@freedomnews.tv to license footage."  (FAC ¶ 21; Pl. Ex. 2.)  Beneath the post of the Video is a link to Plaintiff's YouTube channel, where the full version of the Video is displayed.[2]  (FAC ¶ 22.)  Both versions of the Video contain a "FreedomNews.tv" watermark for the duration of the Video.  (*Id*. ¶ 23.)  Plaintiff also registered the Video with the USCO on February 1, 2024.  (*Id*. ¶ 15.)

## II.  Townsquare's Alleged Infringement of the Video

---

[1] Fedun's original X publication is available at: https://x.com/ScooterCasterNY/status/1744367133830631510 (last visited Nov. 20, 2025).
[2] The Video on Plaintiff's YouTube channel is available at: https://www.youtube.com/watch?v=SvnDnnlRGtE (last visited Nov. 20, 2025).

On the same day Plaintiff released the Video, Townsquare published an article titled "Pro-Palestine Protestors Block Traffic From Entering NJ" (the "Article") and reproduced a screenshot of the Video (the "Screenshot") on its Website.[3]  (*Id*. ¶ 35.)  According to Plaintiff, Townsquare's Screenshot depicts a "critical moment" from the Video—protestors standing beneath a Holland Tunnel sign while blocking the entrance and holding signs.  (*Id*. ¶ 36.)  Townsquare employed the Screenshot as a cover image for its Article.  (*Id*.; Pl. Ex. 1.)  Townsquare did, however, credit Plaintiff by including a "FreedomNews.tv" logo on the bottom right of the Screenshot.  (FAC ¶ 37; Pl. Ex. 1.)  Townsquare also displayed the Video in the Article.  (FAC ¶ 37; Pl. Ex. 4.)

**PROCEDURAL HISTORY**

Plaintiff commended this action on June 3, 2024.  (ECF No. 1.)  On October 10, 2024, Plaintiff filed the FAC.  (ECF No. 19.)  Townsquare moved to dismiss the FAC on April 15, 2024.  (ECF No. 24.)  Plaintiff opposed the motion.  (ECF No. 26.)  Townsquare filed a reply memorandum in further support of their motion.  (ECF No. 28.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements"

---

[3] The Article is available at: https://nj1015.com/pro-palestine-protestors-holland-tunnel (last visited Nov. 20, 2025).

3

or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference… and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### DISCUSSION

In the instant action, Plaintiff alleges that Townsquare infringed its copyright by displaying the Video and reproducing the Screenshot on its Website. (FAC ¶¶ 35, 38.) In response, Townsquare asserts that the FAC's dismissal is warranted because (1) X's Terms of Service and Developer Agreement and Policy ("Developer Agreement") grants third parties license to display videos through X's embedding functionality; (2) the use of a Screenshot is *de minimis*; and (3) the Screenshot was fair use as a matter of law. (ECF No. 25, "Def. Mot.," at 1–2.) The Court will address each claim in turn.

### I. Townsquare's License Defense for Displaying the Video

Townsquare first argues that Plaintiff's copyright infringement claim fails because X's Terms of Service and Developer Agreement permit third parties to sublicense content published on its platform.[4] (Def. Mot. at 6–11.) The existence of an applicable license is "an affirmative

---

[4] "[A]n 'embedded' image [or video] is one that hyperlinks to a third-party website. To embed an image [or video], a coder or web designer adds an 'embed code' to the HTML instructions; this code directs the browser to the third-party server to retrieve the image [or video]. Thus, the image appears on the new page, but links to and remains hosted on

4

defense to a claim of copyright infringement, and is a defense that the alleged infringer must plead and prove." *Lynk Media LLC v. Mediaite*, 2025 WL 89226, at *5 (S.D.N.Y. Jan. 14, 2025) (quoting *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (per curiam)). When the potential license derives from a social media platform's terms of service, courts typically examine a version of the terms "that were in effect when the alleged infringing conduct took place." *Id.* (citing *McGucken v. Newsweek LLC*, 2022 WL 836786, at *2, 7 (S.D.N.Y. Mar. 21, 2022)). Given that the alleged infringement occurred on January 8, 2024, the Court examines the version of X's Terms of Service and Developer Agreement in effect on that date.[5]

### a.  X's Terms of Service and Developer Agreement

X employs a Terms of Service that governs the publication of content on its platform.[6] *See* X Terms of Service § 3.  Relevant here, X's Terms of Service includes a provision for the potential sublicensing of content published by users.  *Id.*  Specifically, when a user publishes content on X, they are subject to the "Your Rights and Grant of Rights in the Content" provision, which states:

> By submitting, posting or displaying Content on or through the Services, you grant [X] a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes [X] to make your Content available to the rest of the world and to let others do the same…

> We have an evolving set of rules for how ecosystem partners can interact with your Content on the Services.  These rules exist to enable an open ecosystem with your

---

the third-party server or website." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 577 n.4 (S.D.N.Y. 2020) (cleaned up).

[5] After reviewing X's Terms of Service, the Court concludes that Version 19 governs the conduct at issue—which was effective September 29, 2023, through November 15, 2024.  *See* https://x.com/en/tos/previous/version_19 (last visited Nov. 20, 2025). Although referenced in X's Terms of Service, the Developer Agreement is available at: https://developer.x.com/en/developer-terms/agreement (last visited Nov. 20, 2025).

[6] As an initial matter, the Court takes judicial notice of X's Terms of Service and Developer Agreement for the limited purpose of resolving Townsquare's motion.  X's Term of Service and Developer Agreement are "publicly accessible; there is no dispute as to the authenticity of the items; and while the meaning of the terms in the items may be in dispute, the existence of the terms themselves is not." *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 600 n.2 (S.D.N.Y. 2020) (citing *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019)).

rights in mind.  You understand that we may modify or adapt your Content as it is distributed, syndicated, published, or broadcast by us and our partners and/or make changes to your Content in order to adapt the Content to different media.

*Id*.

X also maintains a Developer Agreement that may sublicense certain content published on its platform.  For instance, the Developer Agreement includes a "License from X" provision, which states:

Subject to your compliance with the terms of this Agreement and the applicable Incorporated Developer Terms, X hereby grants you a non-exclusive, royalty free, non-transferable, non-sublicensable, revocable license to solely: (1) Use the X API to integrate X Content into your Services or conduct analysis of the X Content, as explicitly approved by X; [and] (2) copy a reasonable amount of and display the X Content on and through your Services to Users, as permitted by this Agreement[.]

X Developer Agreement § II.A.[7]  Townsquare asserts that, when considering X's Terms of Service and Developer Agreement in conjunction, X is granting a sublicense to third parties to embed content published on its platform.  (Def. Mot. 6–11.)

### b.  Whether X Granted Townsquare a License

To counter Townsquare's license defense, Plaintiff identifies several cases where courts have rejected the notion that X's Terms of Service, on their own, provide third parties with a sublicense to embed published content.  (ECF No. 26, "Pl. Opp.," at 7–8.)  Most notable, Plaintiff cites to *Lynk Media LLC v. Mediaite*, where the court rejected a defendant's argument that X's Terms of Service granted them a sublicense.  2025 WL 89226, at \*5–6.  Just as Townsquare does here, the *Mediaite* defendant relied on the "Your Rights and Grant of Rights in the Content" provision.  *Id*. at \*6.  However, the *Mediaite* court found that the "language that follows in the

---

[7] "X Content" is defined to encompass posts and associated data while "Services" is defined to include "websites… that display X Content or otherwise use the Licensed Material."  X Developer Agreement § I. 7, 12. "X API" is defined as "the related tools, documentation, data, technology, code, and other materials provided by X through the Developer Site."  *Id*. § I.10.  X's Developer Site specifies that embedding is part of the "tools… technology, [and] code" it provides.  *Id*.

Terms of Service may be read to limit the reach of [X's] sublicensing right to its 'ecosystem partners,' which [Townsquare] does not claim to be." *Id*. Such "ambiguities" prevented the *Mediaite* court from concluding that X's Terms of Service granted the defendant a sublicense. *Id*. Other courts in this district have reached similar conclusions. *See, e.g.*, *Ong v. Townsquare, Inc.*, 2025 WL 2294867, at *3 (S.D.N.Y. Aug. 8, 2025) ("The Court… cannot dismiss [plaintiff's] claim at this stage because there is no basis in the existing record—either in the Complaint or the relevant X policies—to conclude that Townsquare in fact holds a valid sublicense from X."); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 303 (S.D.N.Y. 2011) (rejecting defendant's licensing defense by interpreting identical language in the Terms of Service of X's predecessor, Twitter).

Aware that relying solely on X's Terms of Service is insufficient to establish a license defense, Townsquare now points to X's Developer Agreement as evidence that X exercised its right to sublicense content published on its platform. (Def. Mot. at 9.) Courts in this district, however, have recently rejected this argument. For instance, the court in *Lynk Media, LLC v. Indep. Digital News & Media, LLC* concluded that X's "Developer Agreement is hardly a clear sublicense for users like Defendant to embed Videos on its website." 2025 WL 2771625, at *12 (S.D.N.Y. Sept. 29, 2025). The court emphasized that the "License *to* X" provision of the Developer Agreement explicitly "grant[s] X a non-exclusive, royalty free, non-transferable, non-sublicensable revocable license to access… any webpage or applications on which you display X Content using ***embedded posts***." *Id*. (emphasis added). Meanwhile, the "License *from* X" provision of the Developer Agreement—which Townsquare relies on—fails to expressly contemplate "embedded posts." *Id*.

Notwithstanding the merits of Townsquare's license defense, such an argument is also premature at this juncture because "[t]he authenticity and applicability of [X's] Developer

Agreement and Policy is a valid subject for fact discovery." *Yang v. Townsquare Media, Inc.*, 2024 WL 4706892, at *2 (S.D.N.Y. Nov. 7, 2024); *see also Mediaite*, 2025 WL 89226, at *6 (denying defendant's motion to dismiss, in part, because of "the limited review [of X's Terms of Service] allowed at this stage"); *Ong*, 2025 WL 2294867, at *3 (declining to credit, at the motion to dismiss stage, Townsquare's "reli[ance] on X's Developer Agreement, which it argues establishes a sublicense between itself and X," because the plaintiff had "not alleged that [the defendant] is party to the Developer Agreement").

Consequently, the Court denies the motion to dismiss with respect to Townsquare's use of the Video.

## II.    Whether Townsquare's use of the Screenshot was *De Minimis* and Fair Use

Townsquare next argues that Plaintiff's copyright infringement claim fails because the use of a Screenshot, a single frame from the Video, was *de minimis* and fair use. (Def. Mot. at 13.)

To prevail on a copyright infringement claim, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work.]"  *Ong*, 2025 WL 2294867, at *3 (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010)).  Substantial similarity requires a plaintiff to demonstrate that (a) "it was protected expression in the earlier work that was copied" and (b) "the amount that was copied is 'more than *de minimis*.'"  *Rudkowski v. MIC Network, Inc.*, 2018 WL 1801307, at *3 (S.D.N.Y. Mar. 23, 2018).  In other words, the copying must be "quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred."  *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997).  "To establish that the infringement of a copyright is *de minimis*, and

8

therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial as to fall below the quantitative threshold of substantial similarity." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998).

Most recently, a court in this district recognized that "[s]ingle still-frame screenshots from videos posted on social media platforms, which make up a very small fraction of the original video, are generally considered to constitute *de minimis* use and fall below the substantial similarity threshold." *Ong*, 2025 WL 2294867, at *4. The *Ong* court is not alone in reaching this conclusion. *See Rudkowski*, 2018 WL 1801307, at *4 ("Plaintiff cannot… argue that the Photograph is a permanent fixture on the Website and that… Defendant's use is not *de minimis*."); *Konangataa v. Am. Broad. Cos., Inc.*, 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (same); *but see Eliahu v. Mediaite, LLC*, 2024 WL 4266323, at *2–4 (S.D.N.Y. Sept. 23, 2024).

Plaintiff argues that Townsquare's use of the Screenshot was not *de minimis* because it "extracted a critical moment of the Video… captur[ing] the protestors standing in the street beneath the Holland Tunnel sign, directly in front of the tunnel's entrance/exit, while holding signs in support of their protest." (Pl. Mot. at 14.) Plaintiff's argument, however, is in direct conflict with the *Ong* court's ruling. The *Ong* court determined that a defendant's use of a screenshot depicting "the moment [a] police vehicle drove through the barricade" at a climate protest that "blocked a road to a desert-based event called Burning Man" was *de minimis*. *Ong*, 2025 WL 2294867, at *1, 4. Moreover, while a small cluster of courts appear to reach an opposite conclusion, the facts of this action are readily distinguishable. For instance, the court in *Eliahu v. Mediaite* concluded that a defendant's use of a screenshot "captur[ing] the one distinctive moment" of a video was not *de minimis* because the screenshot "was the only image that [the defendant] used to illustrate the Article, and the Screenshot was visible to the Article's readers for the entire time the Article was

displayed on the readers' screens." 2024 WL 4266323, at *3. In comparison, Townsquare's Article includes an additional embedded video from the New York Post. (Myers Decl., Ex. C.) Nor is the Screenshot displayed throughout the Website. *Id*.

The Court therefore grants Townsquare's motion with respect to its use of the Screenshot because a single frame of a ten-minute-and-twenty-two second video in a "quantitative sense… is trivial." *Rudkowski*, 2018 WL 1801307, at *4. As a result, the Court need not determine Townsquare's fair use argument.

## CONCLUSION

For the foregoing reasons, Defendant Townsquare Media, Inc.'s motion to dismiss the FAC is GRANTED in part and DENIED in part. The motion to dismiss is GRANTED with respect to Townsquare's use of the Screenshot. However, the motion to dismiss is DENIED with respect to Townsquare's use of the Video. Townsquare is therefore directed to answer Plaintiff's FAC by December 22, 2025.

SO ORDERED,

Dated: December 1, 2025
       White Plains, NY

_____
Nelson S. Román, U.S.D.J.